**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| MICROSTRATEGY INCORPORATED | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:15-cv-00021-JAG |
| | ) | |
| v. | ) | |
| | ) | |
| APTTUS CORPORATION | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................2

LEGAL STANDARD..................................................................................................................3

ARGUMENT ..............................................................................................................................5

    I.    THE PATENTS-IN-SUIT CLAIM PATENT-INELIGBLE ABSTRACT
        IDEAS UNDER § 101 .................................................................................................5

        A.    The Legal Standard - Patent Eligibility Under 35 U.S.C. § 101 .................... 5

        B.    The '798 Patent is Directed To Patent-Ineligible Subject Matter .................. 7

        C.    The '577 Patent is Directed To Patent-Ineligible Subject Matter ................ 11

        D.    The '303 Patent is Directed To Patent-Ineligible Subject Matter ................ 14

    II.    MICROSTRATEGY HAS FAILED TO STATE A CLAIM OF PATENT
        INFRINGEMENT.........................................................................................................16

        A.    MicroStrategy Failed to State a Claim For Direct Patent Infringement ....... 16

        B.    MicroStrategy Failed to State a Claim For Joint Patent Infringement .......... 17

        C.    MicroStrategy Failed to State a Claim of Induced Infringement .................. 18

        D.    MicroStrategy Failed to State a Claim of Contributory Infringement .......... 19

        E.    MicroStrategy Failed To State A Claim For Willful Infringement .............. 21

CONCLUSION...........................................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826 (E.D. Va. 2011) ...................................4, 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ...........................................passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10cv910, 2014 WL 5430956
    (E.D. Va. Oct. 24, 2014) ...................................................................................................9, 10, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................3, 4

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266 (Fed. Cir.
    2012) ..........................................................................................................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................................4

*Bilski v. Kappos*, 561 U.S. 593 (2010)...............................................................................................5

*buySAFE, Inc. v. Google Inc.*, 964 F. Supp. 2d 331 (D. Del. 2013)  ...........................................6

*buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014)...............................................6, 13

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013) ...........................................4

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758,
    767 (E.D. Tex. Jan. 21, 2014) ...................................................................................................7

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed.
    Cir. 2005) ..................................................................................................................................20

*Deerpoint Group, Inc. v. Acqua Concepts, Inc.*, Case No. 1:14-cv-01503-SAB,
    2014 U.S. Dist. LEXIS 173662 (E.D. Cal. Dec. 16, 2014) .............................................16

*DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 273-274
    (S.D.N.Y. July 8, 2014) .............................................................................................................7

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)......................................................18

*Eclipse IP LLC v. McKinley Equipment Corp.*, No. CV 14–154–GW(AJWx),
    2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) .......................................................................6

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ....................................................................4

*Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, No. 2:10cv616,
    2011 WL 2551002 (E.D. Va. June 27, 2011) .................................................................3, 4

*Gametek LLC v. Zynga, Inc.*, Nos. CV 13–2546 RS, 2014 WL 1665090 (N.D. Cal.
    Apr. 25, 2014) ...........................................................................................................................7

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12–1736–LPS–CJB, 2014
  WL 4379587 (D. Del. Sept. 3, 2014)......................................................................6

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ...................................................4

*Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252, 2011 WL 1870591
  (D.N.J. May 16, 2011) .........................................................................................7

*Gottschalk v. Benson*, 409 U.S. 63 (1972) .................................................................5

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323................18, 21

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ....................................21, 22

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ...................19, 20

*Macronix Int'l Co. v. Spansion Inc.*, 4 F.Supp.3d 797, 799 (E.D. Vir. 2014) ........................16, 17

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) .........................17

*Nu Flow Technologies (2000) Inc. v. AO Reed & Co.*, Case No. 13-CV-1818
  BEN, 2014 U.S. Dist. LEXIS 49870 (JMA) (S.D. Cal. Apr. 8, 2014) .......................17, 18

*Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429
  (N.D. Cal. Sept. 19, 2014) ...................................................................................6

*PB&J Software, LLC v. Acronis, Inc.*, 897 F. Supp. 2d 815 (E.D. Mo. 2012) .................18, 20, 21

*Pragmatus AV, LLC, v Tangome, Inc.*, Civil Action No. 11-1092-LPS-CJB, 2013
  U.S. Dist. LEXIS 19075 (D. Del. Feb. 13, 2013) .......................................................17

*Rembrandt Social Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876 (E.D. Va.
  June 12, 2013)...............................................................................................3, 4, 22

*Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-cv-00003-NT, 2012 WL
  5381503 (D. Me. Oct. 31, 2012)...........................................................18, 19, 20, 21

*Sony Corp. v. LG Electronics U.S.A., Inc.*, 768 F.Supp.2d 1058 (C.D. Cal. 2011)......................16

*Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13–1771–RGA, 2014 WL 4382446
  (D. Del. Sept. 3, 2014) .........................................................................................7

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) .................18, 20

*Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) ....................................................3

## STATUTES

35 U.S.C. § 101 ........................................................................................... *passim*

35 U.S.C. § 271 ...........................................................................................16

35 U.S.C. § 271(b) .........................................................................................19

35 U.S.C. § 271(c) ...................................................................................................20

35 U.S.C. § 284...........................................................................................................22

## RULES

Rule 8(a)...................................................................................................................3, 4, 5

Rule 12(b)(6).............................................................................................................3, 6

Rule 12(c)..................................................................................................................6, 7

## <u>INTRODUCTION</u>

Defendant Apttus Corporation ("Apttus") respectfully requests that this Court dismiss the Complaint for Patent Infringement (Dkt. 1) ("Complaint") for failure to state a claim upon which relief may be granted.  Apttus moves for dismissal on two grounds:

*First*, the patents-in-suit claim subject matter that is unpatentable under the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("*Alice*").  In short, the patents-in-suit are directed to the abstract idea of report generation.  The patents-in-suit implement this abstract idea with conventional computer hardware and software constructs.  They "add nothing of substance to the underlying abstract idea" and are therefore ineligible for patent protection.  *Alice*, 134 S. Ct. at 2360.  Since *Alice*, this Court and other courts around the country have invalidated patents, like those of the patents-in-suit, which claim abstract ideas.  Courts have done so at the pleading stage to avoid unnecessary patent litigation. The Court should do the same in this case.

*Second*, the Complaint consists of legally deficient threadbare patent infringement allegations.  In particular, MicroStrategy accuses Apttus of direct infringement, but fails to identify which claims Apttus allegedly infringes and further fails to provide a mapping between any allegedly infringed claim and any accused product.  MicroStrategy also alleges indirect infringement (both contributory and inducement), but fails to allege that Apttus had the requisite intent to cause third parties to directly infringe the patents-in-suit.  MicroStrategy also alleges willful infringement, despite failing to allege pre-lawsuit knowledge of the patents-in-suit, which is a required element.

In sum, and as further explained below, MicroStrategy should never have brought this defective patent lawsuit. The Complaint should be dismissed with prejudice.

## STATEMENT OF RELEVANT FACTS

The genesis of the parties' dispute is a software license, under which MicroStrategy was obligated to make certain payments to Apttus.  MicroStategy refused to pay, which forced Apttus to initiate a breach of contract case against MicroStrategy in Delaware state court.  In response, MicroStrategy threatened to sue Apttus for patent infringement unless Apttus withdrew its complaint.  MicroStrategy did not accompany its threats with any explanation for its patent infringement allegations and, in fact, did not identify the patents-in-suit prior to filing the Complaint.

The patents-in-suit are directed to the abstract idea of generating computerized reports through the use of generic computer equipment.  The patents-in-suit each identify the figure reproduced below as "an embodiment of the invention":



FIG.1

The '798 Patent describes Figure 1 as "a block diagram illustrating a reporting system **100** by which a variety of data resources may be accessed for business analytic, report generation and other intelligence purposes according to an embodiment of the invention." '798 Patent at Col. 5:10-14.  The reporting system claims generic hardware and software to serve "applications

from any operating system environment" and "facilitate[] interaction with all standard database formats." *Id.* at 3:55-61.

More specifically, Figure 1 describes a reporting system **100** comprising *inter alia*: a user engine **102**, an intelligence server **103**, a query engine **106**, a data storage device **108a**, and an analytical engine **104**. The reporting system **100** allows a user to query a database for information and return a report. '798 Patent at 5:21-27. The user engine **102** generates a request for a report. *Id.* at 4:3-7, 11:19-23. The user engine may include a search box on a graphical user interface ("GUI"). *Id.* at 5:44-48. The intelligence server **103** receives the request and processes the received request. *Id.* at Abstract, 4:36-43. The query engine **106** submits the request against the data stored in a data device and returns the results to the analytical engine. *Id.* at 4:14-20. The data storage device **108a** simply holds the data used for generating the report. *Id.* at 4:7-8. The analytical engine **104** receives the results of the query and runs unspecified statistical and logical analyses of the data to generate a repot for presentation to the user. *Id.* at 4:20-24, 7:27-37.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion should be granted if the plaintiff fails to "state a 'plausible claim for relief'" under Federal Rule of Civil Procedure 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). Dismissal is required where the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citation omitted) (internal quotation marks omitted); *see also Rembrandt Social Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 880 (E.D. Va. June 12, 2013); *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, No. 2:10cv616, 2011 WL 2551002, at *1 (E.D. Va. June 27, 2011) ("A complaint need not contain

'detailed factual allegations' in order to survive a motion to dismiss, but the complaint must incorporate 'enough facts to state a belief that is plausible on its face.'") (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

The complaint "must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*quoting Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "To discount such unadorned conclusory allegations, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (*quoting Iqbal*, 556 U.S. at 679) (internal quotation marks omitted). "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Id.* (*quoting Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Merely pleading all of the elements of a claim is insufficient to survive Rule 8(a). *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."); *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) ("What, at base, is insufficient is 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" (citation omitted)). Rather, the complaint must "allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought." *Rembrandt*, 950 F. Supp. 2d at 880. "If the complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to relief, then the motion to dismiss must be granted." *Id.*; *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (stating that a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (citation omitted) (internal quotation marks omitted); *Adiscov,* 762 F.

Supp. 2d at 829 (there are two basic requirements to comply with Rule 8(a): "factual allegations and plausibility of those allegations.").

## ARGUMENT

### I.    THE PATENTS-IN-SUIT CLAIM PATENT-INELIGBLE ABSTRACT IDEAS UNDER § 101

As explained below, the patents-in-suit are invalid because they claim report generation, a well-understood, routine, conventional activity previously known to the industry.  The patents-in-suit fail to transform this abstract idea into a patent eligible application.

### A.    The Legal Standard - Patent Eligibility Under 35 U.S.C. § 101

The categories of patent-eligible subject matter are set forth in 35 U.S.C. § 101.  The Supreme Court has, however, recognized "three specific exceptions to § 101's broad patent-eligibility principles: laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  These judicially-created exceptions embody "the longstanding rule that '[a]n idea of itself is not patentable,'" *Alice,* 134 S. Ct. at 2355 (*quoting Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)), and "are consistent with the notion that a patentable process must be 'new and useful.'" *Bilski*, 561 U.S. at 601-602.

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the Supreme Court confirmed that software patents claiming no more than "abstract ideas" are not patent-eligible because "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2352, 2356–60.   To assess patent-eligibility, the Supreme Court formulated a two-part test:

*First*, a court must determine whether claims are drawn to a patent ineligible concept, such as laws of nature, natural phenomena, or abstract ideas.  *Alice*, 134 S. Ct. at 2355.

*Second*, upon determining that a software patent claims an abstract idea, the court must determine whether the claim elements, both "individually and as an ordered combination," nonetheless "transform the nature of the claim[s]" into a patent-eligible application. *Id.* In that case, the Supreme Court held that "[t]aking the claim elements separately, the function performed by the computer at each step of the process is purely conventional" and "[s]imply *appending conventional steps,* specified at a high level of generality, [is] *not enough to supply an inventive concept.*" *Alice*, S. Ct. at 2357, 2359 (internal quotations omitted) (emphasis added).

Post-*Alice*, courts around the country have come to similar conclusions regarding patents that claim abstract ideas, disposing of infringement suits on motions to dismiss where, as here, the patent is plainly directed to non-patentable subject matter. *See, e.g.*, *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (*aff'g buySAFE, Inc. v. Google Inc.*, 964 F. Supp. 2d 331 (D. Del. 2013)) (dismissing patent infringement complaint based on a Rule 12(c) motion on the pleadings on § 101 grounds.); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at *1-3 (N.D. Cal. Sept. 19, 2014) (dismissing patent infringement complaint on a Rule 12(b)(6) motion on § 101 grounds because the "claims are directed to a very simple abstract marketing idea that uses generic computer and Internet technology, and contain no additional inventive concept."); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. CV 14–154– GW(AJWx), 2014 WL 4407592, at *1, 7, 12 (C.D. Cal. Sept. 4, 2014) (dismissing patent infringement complaint on a Rule 12(b)(6) motion on § 101 grounds because the "claims are directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else"); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12–1736–LPS–CJB, 2014 WL 4379587, at *1 (D. Del. Sept. 3, 2014) (recommending granting Rule 12(b)(6) motion to dismiss on § 101 grounds);

*Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13–1771–RGA, 2014 WL 4382446, at *3, 6 (D. Del. Sept. 3, 2014) (dismissing patent infringement complaint for failure to state a claim because "the evidence is clear and convincing that [the claim] is directed towards an unpatentable abstract idea" of "upselling"); *Gametek LLC v. Zynga, Inc.*, Nos. CV 13–2546 RS, 2014 WL 1665090, at *1 (N.D. Cal. Apr. 25, 2014) (granting Rule 12(c) motion for judgment on the pleadings because the patent was directed to the abstract idea of "the offer and sale of items to players in the course of gaming"); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 767 (E.D. Tex. Jan. 21, 2014) (granting Rule 12(c) motion for judgment on the pleadings because the claim was "directed to the ineligible abstract idea of inventory-based selling without meaningful limitations."); *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252, 2011 WL 1870591, at *1, 4 (D.N.J. May 16, 2011) (dismissing patent infringement complaint for failure to state a claim because claims covering a "system for processing information" on a programmed computer were directed to an "abstract idea" and thus unpatentable under § 101); *cf. DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 273-274 (S.D.N.Y. July 8, 2014) (granting "motions for summary judgment, which could equally validly have been styled motions for judgment on the pleadings" that the asserted patent "claims the abstract idea of meal planning, and thus is invalid under § 101").

**B.     The '798 Patent is Directed To Patent-Ineligible Subject Matter**

In its Complaint, MicroStrategy identifies independent Claims 1 and 5 of the '798 Patent as allegedly infringed by Apttus.  As explained below, each of these claims is directed to ineligible subject matter.  Claim 1 reads as follows:

1. A reporting system comprising:

a report initiating means for generating a request for a report;

one or more data storage devices for holding the data used for generating the report;

an intelligence server, in communication with the report initiating means, for receiving the generated request from the report initiating means, and for routing the request for processing, the intelligence server including

an object server for controlling and managing all application objects independent of an interface or a user;

a query engine for mediating the generated request received from the report initiating means to format and process the request, submitting the request against the data stored in the one or more data storage devices, extracting the data from the data storage devices and returning one or more result sets from the submitted request; and

an analytical engine for receiving the result sets, performing further processing of the result sets by running a plurality of statistical analyses of the data included in the result sets to generate a report for presentation to a user.

Claim 1 is directed to the abstract idea of report generation and does nothing more than apply this abstract idea to generic computer hardware through several steps.  These steps include: (1) "**generating** a request for a report", (2) using "one or more data storage device", (3) a "means for **receiving** the generated request", (4) "an object server for **controlling and managing** all application objects", (5) "a query engine for **mediating the generated request**" and "**extracting the data** from the data storage devices", and (6) "**receiving the result sets**, performing further processing . . . **to generate a report** for presentation to a user."  In other words, Claim 1 is directed to the basic steps of generating a report.

The abstract idea encompassed by the '798 Patent is indeed so broad that it could be performed by a child writing a report for school.  For instance, a school-aged child may generate a report by:  (1) being assigned, by his or her teacher, a topic for the report (i.e. "generating a request for a report"), (2) receiving the assignment for the report from his or her teacher (i.e. "means for receiving the generated request"), (3) accessing a public library (i.e. "data storage device"), (4) controlling and managing data collected at the library for the report, (i.e. "an object server for controlling and managing all application objects"), (5) analyzing information from the

library (i.e. "a query engine for mediating the generated request") and summarizing useful information from the library on a notepad (i.e. "extracting the data from the data storage devices"), and (6) using the notes and other information gathered from the library to write a report (i.e. "receiving the result sets, performing further processing . . . to generate a report for presentation to a user"). Such an abstract idea is not patent eligible.

This Court recently invalidated similar patent claims. In *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10cv910, 2014 WL 5430956, at *7 (E.D. Va. Oct. 24, 2014) this Court reviewed Claim 16 of the '510 Patent which is directed to similar reporting concepts as those claimed in the patents-in-suit and found that the '510 Patent claimed no more than abstract ideas. Claim 16 from that case states:

> 16. A computer program product stored in *a computer readable medium for reporting on a collection of network usage information* from a plurality of network devices, comprising:
>
> computer code for *collecting network communications* usage information in real-time from a plurality of network devices at a plurality of layers;
>
> computer code for *filtering and aggregating the network communications* usage information; computer code for completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users;
>
> computer code for *storing the plurality of data records* in a database;
>
> computer code for *submitting queries to the database utilizing predetermined reports for retrieving information* on the collection of the network usage information from the network devices; and
>
> computer code for *outputting a report based on the queries*;
>
> wherein resource consumption queries are submitted to the database utilizing the reports for *retrieving information* on resource consumption in a network; and
>
> wherein a resource consumption *report is outputted based on the* resource consumption *queries*.

Upon reviewing the claim in light of *Alice* this Court determined:

> In Claim 16, a generic computer collects, filters, aggregates, and completes network communications information. '510 Patent Col. 17. The generic computer then stores the information in a database, and queries the database to retrieve reports. Collecting, filtering, aggregating, and completing network information amounts to "electronic recordkeeping," which is "one of the most basic functions of a computer." Alice, 134 S.Ct. at 2359. Similarly, storing and querying information in a database, and building reports based on that information, is one of the most basic functions of a database system. Accordingly, Claim 16 is directed to a computer functioning in a conventional way, and a database functioning in a conventional way. The claim does not add any specific implementation beyond the abstract idea that information is collected and stored, and reports are generated. Therefore, the claim is directed to an unpatentable abstract idea.

*Amdocs,* 2014 WL 5430956, at *8. In similar fashion, Claim 1 of the '798 Patent is directed to report generation which, like "electronic recordkeeping" is merely an abstract idea. The claimed steps—generating a request for a report, using a data storage device, receiving the generated request, controlling/managing data, mediating the generated request, extracting the data from the data storage devices, and receiving the result sets to generate a report—amounts to utilization of generic computing devices (including a database) to generate a report. That is an abstract idea.

Turning to the second step in patent eligibility test of *Alice*, Claim 1 of the '798 Patent fails to "add any specific implementation beyond the abstract idea that information is collected and stored, and reports are generated." *Amdocs,* 2014 WL 5430956, at *8. Indeed, the structural limitations of Claim 1 of the '798 Patent merely recite conventional computer equipment. For example, the '798 Patent describes the "query engine" this way: "When a valid query such as a search request is received and conformed to a proper format, the query engine may pass the query to one or more of the data storage devices for processing." '798 Patent at Col. 7:1-4. In other words, a "query engine" merely requests data from a database and does not add to the basic functionality of a database. By way of further example, the "analytical engine" is described as

able to "perform statistical, logical or other operations on the results for presentation to the user." *Id.* at 7:29-31.  Of course, performing "operations" on data is a basic function of a computer. The "analytical engine" does not add any specific implementation beyond computerized report generation.

Faced with a similar patent claim in *Amdocs*, this Court concluded that "[t]he claim does not add any specific implementation beyond the abstract idea that information is collected and stored, and reports are generated. Therefore, the claim is directed to an unpatentable abstract idea." *Amdocs,* 2014 WL 5430956, at *8.  Claim 1 of the '798 Patent likewise fails to add any meaningful limitation to the abstract idea.

Independent claim 5 merely rewrites the system of Claim 1 as a method "for generating a report" and imparts no additional limitations that would render the alleged invention patent eligible under 35 U.S.C. § 101.  As this Court has recognized:  "various claim types (method, system, etc.) directed to the same invention should rise and fall together." *Amdocs,* 2014 WL 5430956, at *5.  Claim 5 is, therefore, invalid for the same reasons that Claim 1 is invalid.

In summary, the claims of the '798 Patent are invalid because they claim the abstract idea of computerized report generation, but fail to transform that abstract idea into a patent eligible application.

### C.     The '577 Patent is Directed To Patent-Ineligible Subject Matter

MicroStrategy's Complaint identifies Claims 1, 6, and 12 of the '577 Patent as allegedly infringed by Apttus.  Claim 1 reads as follows:

> A system for enabling the exchange of reporting system information over a computer network comprising:
>
> at least one web server operatively connected to one or more client systems over a HTTP-communication protocol network, wherein the at least one web server and one or more client systems communicate reporting system requests and information without downloading any executable files from the web server to the client system;

at least one reporting server operatively connected to the at least one web server, wherein the web server and the reporting  server communicate suing an extensible markup language;

at least one data storage device operatively connected to the at least one reporting server; and

the at least one reporting server executing the reporting request from the at least one client system using the at least one data storage device and transmitting the retrieved information to the at least one web server using the extensible markup language;

wherein the retrieved information is converted at the at least one web server, to HTML or DHTML and transmitted to the at least one client system without downloading any executable files and wherein the at least one web server does not have a direct connection to the at least one data storage device.

Claim 1 of the '577 Patent is directed to the same computerized report generation system as the '798 Patent, but adds the idea of using the report generation system in conjunction with conventional web servers and client computers.  In particular, the web server functions as an intermediary to allow client computers to make "reporting system requests" to the "reporting server" which, in turn, provides "retrieved information" to the client computers.  The transport of computer files among computer is the basic function of any computer network, including the Internet.  As such, the '577 Patent is directed to an abstract idea.

The '577 Patent also fails the second step of *Alice*'s patent eligibility test.  Specifically, Claim 1 recites generic computing and networking structures, including "HTTP-communication protocol."  However, "[s]imply appending conventional steps, specified at a high level of generality, [is] not '*enough*' to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (emphasis in original).  Indeed, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Id.* at 2358 (internal quotations and citations omitted).

Claim 1 also includes elements pertaining to the interconnection between the recited computing devices, such as "wherein the at least one web server does not have a direct connection to the at least one data storage device."  Under *Alice* the mere inclusion of communication networking components, such as a "communications controller" and "a server component in communication with the client component" cannot transform an abstract idea into a patent eligible application.  Furthermore, as held in the recent *buySAFE* decision:

> That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive. The computers in Alice were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient.

*buySAFE, Inc.*, 765 F.3d 1350 at 1355 (citations omitted); *see also Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) ("At its most basic, however, a 'computer' is 'an automatic electronic device for performing mathematical or logical operations.' 3 Oxford English Dictionary 640 (2d ed. 1989).").

In other words, adding claim elements pertaining to the basic operation of the Internet does not supply an inventive concept to make the '577 Patent eligible.  Performing abstract idea of generating reports in a "networked" environment therefore fails to transform the alleged inventions into patent eligible subject matter.  Claim 1 of the '577 Patent therefore also fails under the second step of *Alice*'s patent eligibility test.

Independent Claim 6 merely rewrites the system of Claim 1 as a method "for enabling the exchange of reporting system information" and imparts no additional limitations that would render the alleged invention patent eligible under 35 U.S.C. § 101.  Claim 12 of the '577 Patent is directed to a generic medium "for causing a processor to enable the exchange of reporting system information."  '557 Patent at Col. 9:25-10:8.  Requiring generic computer

implementation via machine readable code fails to transform the unpatentable abstract ideas of Claim 1 into something more without purporting to improve the functioning of the computer itself, or effecting an improvement in any other technology or technical field. *See Alice,* 134 S. Ct. at 2357.

The claims of the '577 Patent are, therefore, invalid because they claim the abstract idea of computerized report generation, but fail to transform that abstract idea into a patent eligible application.

### D.     The '303 Patent is Directed To Patent-Ineligible Subject Matter

In its Complaint, MicroStrategy identifies Claims 1, 12 and/or 24 of the '303 Patent as allegedly infringed by Apttus.  Independent Claim 1, which is representative of all asserted independent claims, reads as follows:

A system for remote interactive access to data, comprising:

    a network server performing:
        receiving user input to remotely manipulate or modify at least one report
           generated by at least one data source based on content in the data source,
           wherein the report was previously served to a user system;

        presenting one or more markup language constructs associated with actions to
           manipulate or modify the at least one report;
        enabling user input in the report,
           wherein the user input is initiated by activation of a markup language construct
           associated with the at least one report that was served to the user system and
           translating the user input received via first network enabled code to second
           network enabled code;

        a reporting server being configured to respond to the user input, performing:
        communicating with the user interface;
        accessing an image of the at least one report;
        manipulating the at least one report generated from the at least one data source;
           and
        generating results to present via the user interface; and

    a user interface performing:
        remotely accessing and viewing at least one report generated from at least one
           remote data source; and

> providing user input to remotely manipulate or modify the at least one report,
> wherein the user input being provided by activating a markup language construct,
> and
>
> wherein the user input being translated from a first network enabled code to a second
> network enabled code.

Claim 1 of the '303 Patent closely tracks Claim 1 of the '577 Patent.  Like the '577

Patent, the '303 Patent is directed to a report generation system used in conjunction with

conventional web servers and client computers.  As explained above with respect to the '577

Patent, this is an abstract idea under the first step of the *Alice* decision's patent eligibility test.

The '303 Patent also fails the second step of *Alice*'s patent eligibility test for the same

reasons that the '577 Patent fails.  In particular, Claim 1 of the '303 Patent recites generic

computing and networking structures, including "markup language constructs," which is the

technology underlying webpages.  Claim 1 also recites "enabling user input in the report."  But

using a computer to manipulate a computer file is a fundamental operation of computers.

"Simply appending conventional steps, specified at a high level of generality, [is] not '*enough*' to

supply an inventive concept."  *Alice*, 134 S. Ct. at 2357 (emphasis in original).  Claim 1 of the

'303 Patent therefore also fails under the second step of *Alice*'s patent eligibility test.

Independent Claim 12 merely rewrites the system of Claim 1 as a method "remote

interactive access to data" and imparts no additional limitations that would render the alleged

invention patent eligible under 35 U.S.C. § 101.  Claim 24 of the '303 Patent is directed to a

generic "machine readable storage medium."  '303 Patent at Col. 10:4-22.  Requiring

implementation of a variant of the Claim 12 method via machine readable storage medium fails

to transform the unpatentable abstract ideas of Claim 1 and 12 into something more without

purporting to improve the functioning of the computer itself, or effecting an improvement in any other technology or technical field.  *See Alice* 134 S. Ct. at 2357.[1]

In summary, the claims of the '303 Patent are invalid because they claim the abstract idea of computerized report generation, but fail to transform that abstract idea into a patent eligible application.

## II.  MICROSTRATEGY HAS FAILED TO STATE A CLAIM OF PATENT INFRINGEMENT

### A.  MicroStrategy Failed to State a Claim For Direct Patent Infringement

This Court recently held that allegations of direct patent infringement must, at least, "recite[] the specific claim or claims which are alleged to be infringed, and the elements thereof that are alleged to be infringed by the allegedly infringing product, and how that product is alleged to infringe those elements."  *Macronix Int'l Co. v. Spansion Inc.*, 4 F.Supp.3d 797, 799 (E.D. Vir. 2014); *see also Deerpoint Group, Inc. v. Acqua Concepts, Inc.*, Case No. 1:14-cv-01503-SAB, 2014 U.S. Dist. LEXIS 173662 at *8 (E.D. Cal. Dec. 16, 2014) (applying "plausibility standard to all patent claims"); s*ee also Sony Corp. v. LG Electronics U.S.A., Inc.*, 768 F.Supp.2d 1058, 1064 (C.D. Cal. 2011).

MicroStrategy fails to adhere to this Court's pleading requirements.  In particular, for each patent-in-suit, MicroStrategy alleges that "Apttus has been and is currently directly infringing one or more claims of the [patent-in-suit] by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Infringing Products, in violation of 35 U.S.C.§ 271.  Apttus also directs and/or controls its employees, executives,

---

[1] MicroStrategy's Complaint does not accuse Apttus of infringing any dependent claim of the patents-in-suit.  As explained in § II, to state a claim for direct or indirect patent infringement, MicroStrategy must identify each asserted claim.  To the extent that MicroStrategy is not required to identity each asserted claim, the remaining claims of patents-in-suit not discussed herein should be invalidated for the same reasons as those claims specifically discussed herein.

customers, and agents to use the Infringing Products within the United States."  Complaint ¶¶ 14, 23, 32.  MicroStrategy further alleges, for each patent-in-suit, that "[t]o the extent that any fact finder deems any of the elements of the [patent-in-suit] claims not literally satisfied by the structure or use of the Infringing Products, these elements are satisfied under the doctrine of equivalents."  Complaint ¶¶ 17, 26, 35.

MicroStrategy's allegations for direct infringement, whether literally or under the Doctrine of Equivalents, fail to identify (1) the claims of the patents-in-suit allegedly infringed or (2) how Apttus allegedly infringes the elements of the allegedly infringed claims. MicroStrategy's Complaint therefore fails under the *Macronix* decision and should be dismissed on that basis.  *Macronix*, 4 F.Supp.3d at 804.

**B.**     **MicroStrategy Failed to State a Claim For Joint Patent Infringement**

Joint infringement requires that "one party exercises control or direction over the entire process such that every step is attributable to the controlling party, i.e., the mastermind." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (internal quotation marks omitted).  Thus, "for a claim of joint infringement, in addition to satisfying the requirements of Form 18, a plaintiff must also plead facts sufficient to allow a reasonable inference that one party exercises the requisite 'direction or control,' such that performance of every step is attributable to the controlling party."   *Pragmatus AV, LLC, v Tangome, Inc.*, Civil Action No. 11-1092-LPS-CJB, 2013 U.S. Dist. LEXIS 19075 at *10 (D. Del. Feb. 13, 2013); *see also Nu Flow Technologies (2000) Inc. v. AO Reed & Co.*,  Case No. 13-CV-1818 BEN, 2014 U.S. Dist. LEXIS 49870 at *8 (JMA) (S.D. Cal. Apr. 8, 2014) (dismissing joint infringement allegations because "[t]he Complaint contains only conclusory allegations. It is devoid of any factual allegations relating to the relationship between [defendants], how any one of the

defendants asserted control or direction over the others, or what obligations each defendant allegedly had to the other defendants.").

These decisions confirm that MicroStrategy has failed to state a claim for joint infringement.  Specifically, with respect to Claim 1 of the '798 Patent, MicroStrategy alleges that Apttus "directs and/or controls the practicing of all claim elements or because it places the invention into service."  Complaint ¶ 15.  In similar fashion, for claim 5, MicroStrategy alleges that "Apttus would also directly infringe claim 5 at least because it directs and/or controls the practicing of all claimed steps."  Complaint ¶ 16.  MicroStrategy makes the same bald allegations with respect to certain clams of the '577 and '303 Patents.  Complaint ¶¶ 24, 25, 33, 34.

MicroStrategy's allegations lack any plausible facts to allow a reasonable inference that Apttus exercises the requisite "direction or control," but instead merely re-hashes the elements of joint infringement.  MicroStrategy joint infringement allegation should, therefore, be dismissed.

### C. MicroStrategy Failed to State a Claim of Induced Infringement

To establish inducement the plaintiff must show that the alleged inducer: "[1] knew of the patent, [2] knowingly induced the infringing acts, and [3] possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (*citing DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006)); *see also PB&J Software, LLC v. Acronis, Inc.*, 897 F. Supp. 2d 815, 820-21 (E.D. Mo. 2012) (a complaint must "'contain facts plausibly showing that [defendants] specifically intended [others] to infringe the [patent-in-suit] and knew that [others'] acts constituted infringement.'" (alterations in original) (*quoting In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339)); *see also Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-cv-00003-NT, 2012 WL 5381503, at *4 (D. Me. Oct. 31, 2012) (dismissing claim

for induced infringement where the "allegation rehashe[d] the elements of induced infringement, but the Complaint fail[ed] to supply any facts demonstrating the Defendant's knowledge and specific intent to encourage infringement").

For each of the patents-in-suit, MicroStrategy alleges that "upon knowledge of the [patent-in-suit] (at least since the filing date of this Complaint), Apttus is inducing infringement of the [patent-in-suit] by, among other things, knowingly and with intent, actively encouraging its users, customers, suppliers, agents, and affiliates to make, use, sell and/or offer for sale the Infringing Products in a manner that constitutes infringement of one or more claims of the [patent-in-suit], in violation of 35 U.S.C. § 271(b)."  Complaint, ¶¶ 19, 28, 37.

In other words, MicroStrategy has merely re-hashed the elements of induced infringement, but failed to allege any facts to make those allegations plausible.  Indeed, MicroStrategy does not allege that Apttus knew of the patents-in-suit prior to being served with the Complaint.  Nor does MicroStrategy make any factual allegations that Apttus obtained the requite intent to encourage another's infringement in light of the Complaint.  MicroStrategy also fails to identify any claims of the patents-in-suit that a particular third-party infringes.  Nor does MicroStrategy identify how any third-party directly infringes the patents-in-suit.  MicroStrategy has therefore failed to state any claim for induced infringement.  The Court should dismiss those allegations for failure to state a claim.

### D.    MicroStrategy Failed to State a Claim of Contributory Infringement

A claim for contributory infringement requires the plaintiff to show: (1) that there was direct infringement by a third-party; (2) that the defendant knew the combination for which the components were made was patented and infringed; and (3) that the defendant's accused products are material to the infringing activity and have no substantial non-infringing use.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) ("In order to succeed

on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses.") (*quoting Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)); *Vita-Mix Corp.*, 581 F.3d at 1327 (finding plaintiff must show defendant sells "an apparatus for use in practicing a patented method, knowing it to be 'especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use'" (alterations in original) (*quoting* 35 U.S.C. § 271(c)).

In its Complaint, MicroStrategy alleges that "upon knowledge of the [patent-in-suit] (at least since the filing date of this Complaint), Apttus has been and is contributing to the infringement of the [patent-in-suit] by, among other things, knowingly and with intent, actively encouraging its users, customers, suppliers, agents, and affiliates to make, use, sell and/or offer for sale the Infringing Products in a manner that constitutes infringement of one or more claims of the [patent-in-suit], in violation of 35 U.S.C. § 271(c). There are no substantial uses for the Infringing Products that do not infringe one or more claims of the [patent-in-suit]. Apttus' 'Quote-to-Cash' product, for example, has no substantial non-infringing use." Complaint ¶¶ 18, 27, 36.

Because MicroStrategy "merely rehash[es] the cause-of-action elements," its contributory infringement allegations cannot survive a motion to dismiss. *Select Retrieval*, 2012 WL 5381503, at *3. In particular, MicroStrategy failed to plead any facts showing that Apttus's products have no substantial non-infringing use. *See PB&J Software*, 897 F. Supp. 2d at 820 (dismissing contributory infringement claims where plaintiff failed to "plead facts that allow an

inference that the components sold or offered for sale have no substantial non-infringing uses" (*quoting Bill of Lading*, 681 F.3d at 1337)); *Select Retrieval*, 2012 WL 5381503, at *3 (dismissing contributory infringement claim where the complaint alleged that the defendant's accused products and services "have no substantial non- infringing uses" and defendant provided such products and services to customers "whose use of such services and products constitutes direct infringement of the [asserted patent].").

In addition, MicroStrategy has failed to provide any factual allegations from which this Court could at least infer that Apttus knowingly contributed to third-party direct infringement. *Select Retrieval*, 2012 WL 5381503, at *3 (finding no factual basis for contributory infringement claim where plaintiff only stated that the accused products and services have no substantial non-infringing use and that customers' use of those products and services constitutes direct infringement).

MicroStrategy has thus failed to plead the basic elements of a claim for contributory infringement.  Those allegations should be dismissed.

### E.     MicroStrategy Failed To State A Claim For Willful Infringement

To establish willful infringement, the plaintiff must show "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Willful infringement therefore requires "at least a showing of objective recklessness." *Id.* In addition, "the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.*  "[A]n allegation of willful infringement must depend upon pre-suit knowledge of the patent in issue." *Rembrandt*, 950 F. Supp. 2d at 884 (emphasis added). Willful infringement therefore cannot be based solely on knowledge of the patents that arises from the service or filing of the lawsuit. *Id.*

at 876; *see also Id.* at 884 ("To conclude otherwise would lead to the anomalous result that every lawsuit alleging infringement could include a willful infringement claim based on simply the filing or the serving of the complaint."); *In re Seagate*, 497 F.3d at 1374.

In its Complaint, MicroStrategy seeks "[a] full accounting for and an award of damages to MicroStrategy for Apttus infringement of the [patents-in-suit]; including enhanced damages pursuant to 35 U.S.C. § 284 [and] [a]n award of treble damages for infringement as a result of Apttus' willful infringement."  Complaint, Prayer for Relief, ¶¶ m-o.

MicroStrategy's willful infringement allegations, as quoted above, do not allege any pre-suit knowledge of those patents or "objective recklessness" with respect to the risk of infringement as required under *In re Seagate* to establish a finding of willful infringement. MicroStrategy also has not alleged any connection between those patents and Apttus's product lines that could create an objective risk of infringement.  Finally, any knowledge that Apttus acquired of those patents from the Complaint cannot support a willful infringement claim going forward because willful infringement must depend on pre-litigation conduct.  *Rembrandt*, 950 F. Supp. 2d at 884.

Therefore, MicroStrategy has failed to state a claim for willful infringement of the patents-in-suit, and its allegations should be dismissed.

## CONCLUSION

For the forgoing reasons, Apttus respectfully requests that the Court dismiss this case without leave to amend.

Dated:  February 20, 2015                    Respectfully submitted,


  /s/ Veronica S. Ascarrunz

Veronica S. Ascarrunz (VSB No. 67913)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Phone: 202.973.8812
Fax: 202.973.8899
vascarrunz@wsgr.com

*Counsel for Defendant Apttus Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 20, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel for MicroStrategy Incorporated:

Daniel R. Gopenko
Andrew Kopsidas
J. Wesley Samples
FISH & RICHARDSON, P.C.
1425 K Street, NW, 11th Floor
Washington, DC 20005
gopenko@fr.com
kopsidas@fr.com
samples@fr.com

  /s/ Veronica S. Ascarrunz

Veronica S. Ascarrunz (VSB No. 67913)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Phone: 202.973.8812
Fax: 202.973.8899
vascarrunz@wsgr.com

*Counsel for Defendant Apttus Corporation*