IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICROSTRATEGY INCORPORATED,

    Plaintiff,

v.                                         Case No. 3:15-cv-21-JAG

APTTUS CORPORATION,

    Defendant.

## OPINION

MicroStrategy brought suit against Apttus claiming infringement on three of MicroStrategy's patents. Based upon 35 U.S.C. 101,[1] the Court finds that the patents at issue claim patent-ineligible subject matter. The three patents are directed at the abstract ideas of report generation and data storage. Looking to the claims themselves, the Court finds nothing to transform these abstract ideas into patent-eligible subject matter under the Supreme Court's *Alice* decision. Consequently, the Court will GRANT the defendant's motion.

## I. Background

MicroStrategy is a worldwide provider of enterprise software platforms for business intelligence and analytics, including mobile applications, offered in the cloud and on business' premises. MicroStrategy owns the three patents at issue, patents '798, '577, and '303.[2] Apttus Corporation provides business intelligence systems including software, web based services, and

---

[1] Apttus also argues the complaint should be dismissed because MicroStrategy fails to state a claim under the *Twombly* and *Iqbal* pleading standards. Although the Court need not reach the issue, the Court notes the plaintiff has failed to state a claim under *Twombly* and *Iqbal*. If the case had proceeded, the Court would have granted the plaintiff leave to amend its complaint. *See Macronix International Co., v. Spansion Inc.*, 4 F. Supp. 3d 797 (E.D. Va. 2014).

[2] These patents are continuations of patents originally filed in 2001.

software as-a-service applications, including contract management, contract compliance, and contract lifecycle management.

In this action, MicroStrategy alleges Apttus is "directly infringing on the patents by using, offering to sell, and/or selling, and/or importing, infringing products in violation of 35 U.S.C. § 271."[3]   MicroStrategy insists that Apttus directs and/or controls its employees, executives, customers, and agents to use the infringing products in the United States. The plaintiff alleges three counts in the complaint: count one, infringement of the '798 patent, count two, infringement of the '577 patent, and count three, infringement of the '303 patent.

The first patent, '798, is an "intelligence server system."   The second patent at issue, '577, is a "method and system for providing business intelligence web content with reduced client-side processing."   Lastly, the '303 patent is a "system and method for remote manipulation of analytic reports."

## II. Standard[4]

---

[3] "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271.

[4] Patentability under 35 U.S.C. § 101 is a threshold legal issue and it may be determined on the pleadings. Courts routinely dismiss patent claims under § 101 on Rule 12(b)(6) motions and Rule 12(c) motions. *See BASCOM Global Internet Services, Inc. v. AT & T Mobility LLC*, No. 3:14–cv–3942–M, 2015 WL 2341074, *8–*14 (N.D. Tex. 2015) (granting a Rule 12(b)(6) motion because claims directed to a method and system for filtering Internet content were invalid under § 101 as they were directed to an abstract idea of filtering content performed with generic computer equipment); *Content Extraction & Transmission, LLC, v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. Dec. 23, 2014).   Claim construction is not necessary to dismiss patent claims at the 12(b)(6) stage or on a 12(c) motion. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010); *Content*, 776 F.3d at 1349; *Cyberfone Sys., L.L.C. v. CNN Interactive Grp.*, 558 Fed. App'x 988, 992 n. 1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."). The Court finds that the basic character of the subject matter is "readily ascertainable from the face of the patent" and MicroStrategy offers no reason not to proceed with the § 101 inquiry. *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. c. 12-04182, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013).

Apttus claims that the patents at issue are directed at patent-ineligible subject matter under 35 U.S.C. § 101 and thus the Court should dismiss the complaint. This statute defines the subject matter eligible for patent protection.[5] The statute provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

35 U.S.C. § 101.

Section 101 "contains an important implicit exception." *Alice Corp. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013)). There are three patent-ineligible concepts: (1) laws of nature, (2) natural phenomena, and (3) abstract ideas. *Id.*[6] Although laws of nature, natural phenomena, and abstract ideas are not patentable, inventions that "integrate" such laws, phenomena, or ideas "into something more" qualify for patent protection. *Alice*, 134 S.Ct. at 2354. Two recent Supreme Court cases, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289

---

[5] MicroStrategy argues that Apttus must show, by clear and convincing evidence, that the patents are directed at patent-ineligible subject matter. (Dk. No. 21 at 6.) Courts are split over the standard of proof in § 101 challenges. *In Re TLI Communications LLC Patent Litigation*, ---- F. Supp. 3d ----, 2015 WL 627858, at *19 (E.D. Va. 2015) (finding that regardless of the standard applied, the only plausible reading of the patent was that it was directed at patent-ineligible subject matter and was therefore invalid); *see Intellectual Ventures I LLC, v. Symantec Corp.*, 2015 WL 1843528, at *5-6 (D. De. Apr. 22, 2015) (finding it unnecessary to resolve the dispute over the standard of proof and holding under either the clear and convincing standard or the preponderance of the evidence standard that the patent was not patent-eligible). The Court finds that regardless of the standard applied, the claims here are ineligible based on a reading of the claims themselves.

[6] In *Alice*, the Court identified a "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S.Ct. at 2355 (citing *Mayo.*, 132 S.Ct. at 1296-97). As the Court stated in *Alice*, "at some level all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." 134 S.Ct. at 2354 (quoting *Mayo*, 132 S.Ct. at 1293). Acknowledging this reality, the court in *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), noted that not all software-based patents will necessarily be directed at an abstract idea. 772 F.3d at 715.

Supreme Court cases, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289

(2012) and *Alice Corp. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014), have substantially altered the §

101 landscape. Patentability under § 101 is now a higher bar. *Enfish, LLC v. Microsoft Corp.*,

56 F.Supp.3d 1167, 1170 (C.D. Cal. Nov. 3, 2014).

A § 101 analysis begins by identifying whether the claims at issue are directed to one of

the aforementioned patent-ineligible concepts. Then, if the Court determines that the claims at

issue are directed to one of the patent-ineligible concepts (like an abstract idea), the Court must

determine whether the claims contain "an element or combination of elements that is 'sufficient

to ensure that the patent in practice amounts to significantly more than a patent upon the

[ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S.Ct. at 1294) (alterations in original).

Courts analyzing software and computer-related inventions have rejected the inventions based

upon the "abstract idea" exception.

If the Court finds the claims are directed at an abstract idea, the Court moves to the

second step of the analysis. The Court must determine whether the claims contain an "inventive

concept" to "transform" the abstract idea into patent-eligible subject matter. *Alice*, 134 S.Ct. at

2357 (quoting *Mayo*, 132 S.Ct. at 1294, 1298). The transformation of an abstract idea into

patent-eligible subject matter requires more than simply stating the abstract idea while adding the

words "apply it." *Id.* (quoting *Mayo*, 132 S.Ct. at 1294). A claim that recites an abstract idea

must include additional features to ensure that the claim is more than a drafting effort designed to

monopolize that abstract idea. *Id.* Those additional features must be more than "well-understood,

routine, conventional activity." *Mayo*, 132 S.Ct. at 1298.[7]

---

[7] Courts have found the following patents patent-ineligible: intermediated settlement risk (*Alice*), risk-hedging (*Bilski*), third-party guarantees (*buySAFE*), collecting, storing and identifying data (*Content Extraction*), a method for creating output files from images, (*Market Track*), and a

4

## III. Analysis[8]

The Court looks to the claims themselves to determine whether the patents at issue are patent-ineligible. Apttus argues that the claims demonstrate that the patent is directed at the abstract idea of report generation. MicroStrategy, on the other hand, states that the inventions allow businesses to look at data in new ways. The Court will look at each of the three patents individually.

### A. '798 Patent – "Intelligence Server System"

Claim 1 of the '798 patent is:

1. A reporting system comprising:

- A report initiating means for generating a request for a report;

- One or more data storage devices for holding the data used for generating the report;

---

patent directed at taking, organizing, classifying and storing photographs (*In Re TLI Communications*). *See Market Track*, 2015 WL 3637740, *6 (discussing Supreme Court and Federal Circuit holdings). In contrast, the Court has upheld patents involving an invention that allows a host website to send its "visitors to a web page on the outsource provider's server that 1) incorporates "look and feel" elements from the host website, and 2) provides visitors with the opportunity to purchase products from the third-party merchant without actually entering that merchant's website." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). A Northern District of Illinois district court upheld a patent that technologically improved graphical user interfaces. *Trading Technologies, Inc. v. CQG, Inc.*, No. 05–cv–4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015). The invention itself involved improvements to electronic trading. *Id.*

[8] The parties discuss Claim 1 and Claim 5 of the '798 patent. The Court will look at Claim 1 as a "representative claim." The Federal Circuit affirmed a district court's methodology invalidating a patent under § 101 on a single, representative claim, as the district court correctly determined that addressing each claim of the asserted patents was unnecessary. *Content Extraction & Transmission, LLC*, 776 F.3d 1343. "Because the analysis of claims under 35 U.S.C. § 101 is the same regardless of claim type, i.e. method claim, system claim, computer readable medium claim, etc., this Court may analyze one representative claim from each of the asserted patents." *Trading Technologies, Inc.*, 2015 WL 774655, at *1. The Court will do the same for the '577 patent and the '303 patent.

- An intelligence server, in communication with the report initiating means, for receiving the generated request from the report initiating means, and for routing the request for processing, the intelligence server including;

- An object server for controlling and managing all application objects independent of an interface or user;

- A query engine for mediating the generated request received from the report initiating means to format and process the request, submitting the request against the data stored in the one or more data storage devices, extracting the data from the data storage devices and returning one or more result sets from the submitted request; and

- An analytical engine for receiving the result sets, performing further processing of the result sets by running a plurality of statistical analyses of the data included in the result sets to generate a report for presentation to a user.

(Dk. No. 1-1 at 12; '798 Patent col 12:10-35.)

### 1. Step One

The first step of the § 101 analysis with respect to the '798 patent is to determine whether the claims at issue are directed at a patent-ineligible concept. The Court looks to the "elements of each claim both individually and as "an ordered combination" to determine whether the additional elements "transform the nature of the claim" into patent-eligible application." *Alice*, 134 S.Ct. at 2355 (citing *Mayo*, 132 S.Ct. at 1297-98).

The '798 patent is directed at the abstract idea of data storage and report generation. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 56 F. Supp. 3d 813, 820-21 (E.D. Va. 2014); *Intellectual Ventures I,* 2015 WL 1843528 (finding a patent disclosing a method for filtering e-mails was directed to a patent-ineligible abstract idea). The invention allows for the gathering of information, the sorting and classification of that information, and report generation based on the information. Similar to the *Market Track* case, the patent is essentially a "method of processing a query and returning results, deriving content from those results, and then organizing and delivering that content somewhere." *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC,* No. 14 c 4957, 2015 WL 3637740, at *5-6 (N.D. Ill. June 12, 2015). Identifying, organizing, and presenting stored information is an abstract idea that is "devoid of a concrete or tangible application." *Id.* (citing *Ultramercial, Inc.,* 772 F.3d at 715). The claims throughout note that the patent is a "reporting system" and a "method for generating a report." The background of the invention notes that the invention itself is directed at data warehousing. This can mean nothing else but data storage, a concept that is absolutely an abstract idea.

Courts have held that electronic recordkeeping and data collection are abstract ideas. *In Re TLI Communications,* 2015 WL 627858, at *8 (noting that the "patent claims at issue are clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs").[9] A recent case noted that the plaintiff did not identify "a single case holding that a process of gathering, manipulating, presenting or distributing stored data is not abstract." *Market Track,*

---

[9] Courts have found data storage is a "method that can be performed by human thought alone" and is therefore "merely an abstract idea [that] is not patent-eligible under § 101." *In Re TLI Communications,* 2015 WL 627858, at *8 (citing *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1373 (Fed. Cir. 2011)). Similarly, the "idea of collecting information in classified form, then separating and transmitting that information according to its classification" is an abstract idea that is not patent-eligible. *Cyberfone,* 558 Fed. App'x at 992; *BASCOM Global Internet Services,* 2015 WL 2341074, at *8 (finding filtering internet content an abstract idea and a "well-known method of organizing human activity").

*LLC*, 2015 WL 3637740, at *6. ("The basic concept of selecting a useful subset of data from a larger stored pool of data, organizing it for review, and disseminating the collected and organized results to others is the fundamental process by which information is used and shared in the modern economy."). In *Market Track*, the Court found a patent that read through stored data, recognized certain information within that stored data, and presented that information in a human-readable format patent-ineligible. *Id.* at *6-7. Based on the applicable law, the Court finds the '798 patent is directed at the abstract idea of report generation and data storage.

### 2. Step Two

Finding that the patent is directed at an abstract idea, the Court turns to the second step under the § 101 analysis. Under this step, the Court determines whether the patent adds an "inventive concept" that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S.Ct. at 2358. The claim that recites an "abstract idea must include additional features" which "must be more than well-understood, routine, conventional activity."[10] *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S.Ct. at 1297-98).

The '798 patent relies on a computer operating in a "normal, expected manner." *Id.* Although the patent involves "query engines" and "intelligence servers," these components do not transform the abstract idea. As discussed in *In Re TLI Communications*, being tied to an intelligence server is not enough to pass step two of the *Alice* test. 2015 WL 627858, at *12-14 (noting that "because the concept of data collection, recognition, and storage is undisputedly

---

[10] "Adding generic data processing functions that are already well-understood, routine and conventional – such as compiling, formatting, or labeling images – to automate these tasks does not transform an abstract idea into a patent-eligible method." *Market Track*, 2015 WL 3637740, *7.

well-known," the plaintiff's assertion that the patent involved an "intelligent" server failed). It is "undisputed that the ability for a 'computer [to] receive[] and send [ ] information over a network – with no further specification – is not even arguably inventive." *In Re TLI Communications*, 2015 WL 627858, at *12 (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (E.D. Va. 2015)).

Plaintiff states "patents-in-suit are directed to problems that did not exist until electronic records had grown so vast and complex that they ceased to be compatible, [become] difficult to query, or could otherwise mask important strategic trends." (Dk. No. 21 at 21-22.) The amount of data does not transform the abstract idea. It has been noted that "data storage is perhaps the textbook example of a conventional computer function." *In Re TLI Communications*, 2015 WL 627858, at *13.

In *Amdocs*, a case frequently cited in this case, the Court found the patent at issue was "directed to a computer functioning in a conventional way, and a database functioning in a conventional way." *Amdocs Ltd.*, 56 F. Supp. 3d at 823 (finding the claim directed to an "unpatentable abstract idea"). Similarly, the court found that the claim "did not add any specific implementation beyond the abstract idea that information is collected and stored, and reports are generated." *Id.*

MicroStrategy insists that the claimed solutions are "rooted in computer technology in order to overcome a problem specifically arising in the realm of complex, non-compatible, and numerous data portfolios." (Dk. No. 21 at 14-15.) MicroStrategy argues that the patents-in-suit recite "specialized layered components," all of which are "much more than mere generic computers or generic computer components, and all of which are specialized devices in the field of business intelligence products." (Dk. No. 21 at 18.) Even synthesizing large amounts of data

and generating numerous reports does not transform an idea into a patent-eligible one. Humans are capable of sorting data. The patent itself notes that a restaurant manager may submit a query to view gross sales in the State of New York in 1999. (Dk. No. 1-1 at 10; Patent '798; col. 7:5-12.) Then the patent indicates that the data storage device is searched and results are generated. *Id.* These report generations "organize human activity." *Amdocs Ltd.*, 56 F. Supp. 3d at 818 (citing *Alice*, 134 S.Ct. at 2356). This organizing of human activity, including data and report generation, is presumptively patent-ineligible. *Id.*

MicroStrategy also relies heavily on the Federal Circuit's holding in *DDR Holdings, LLC.* In that case, the Federal Circuit held that claims covering "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with the content of a third-party merchant" passed muster under a § 101 analysis. 773 F.3d at 1248. The web page prevented third-party merchants from luring traffic away from a host website, and did so by creating a new web page allowing the visitor to be essentially in two places at once. *Id.* This patent solved a problem unique to the Internet. *Id.* at 1257 (noting that the patent was "necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks").

For the reasons discussed above, the Court finds the '798 patent is patent-ineligible under the *Alice* test because it is directed at the abstract idea of report generation and data storage. The invention does not transform that abstract idea into something patent-eligible.

**B. '577 Patent – "Method and System for Providing Business Intelligence Web Content with Reduced Client-Side Processing"**

The '577 patent reads:

A system for enabling the exchange of reporting system information over a

computer network comprising:

- At least one web server operatively connected to one or more client systems over a HTTP-communication protocol network, wherein the at least one web server and one or more client systems communicate reporting system requests and information without downloading any executable files from the web server to the client system;

- At least one reporting server operatively connected to the at least one web server, wherein the web server and the reporting server communicate using an extensible markup language;

- At least one data storage device operatively connected to at least one reporting server; and

- The at least one reporting server executing the reporting request from the at least one client system using at least one data storage device and transmitting the retrieved information to the at least one web server using the extensible markup language;

- Wherein the retrieved information is converted, at the at least one web server, to HTML or DHTML and transmitted to the at least one client system without downloading any executable files and wherein the at least one web server does not have a direct connection to at least one data storage device.

(Dk. No. 1-2 at 10; '577 Patent col. 8:20-46.)

### 1. Step One

As discussed above, the first step of the § 101 analysis is to determine whether the claims at issue are directed at a patent-ineligible concept. The '577 patent is also directed to the abstract

idea of data collection and report generation. *See In Re TLI Communications*, 2015 WL 627858, at *8 (noting "the '295 patent claims at issue are clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs").[11]   The patent, "a method and system for providing business intelligence web content with reduced client-side processing" involves a means for the "communication of reporting system reports to users connecting via a web server." (Dk. No. 1-2 at 2.)

This invention provides a means to exchange business intelligence information efficiently. Through using this system, "analysts, managers and other users may query or interrogate a plurality of databases or database arrays to extract demographic, sales, and/or financial data and information and other patterns from records stored in such databases. . . ." (Dk. No. 1-2 at 8; '577 Patent col. 3:5-10).   As discussed above, the invention clearly gathers information and produces reports. This is an abstract idea that is not patent-eligible.

2. Step Two

Finding that the patent at issue is directed to the abstract ideas of report generation, the Court looks to the claims to determine if they include an inventive concept. The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S.Ct. at 2358.   The claim that recites an "abstract idea must include

---

[11] *Cyberfone*, 558 F. App'x at 992 (holding that the "well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification is an abstract idea that is not patent-eligible"). In *Content Extraction & Transmission*, the Court invalidated a patent that recited a method of (i) extracting data from hard copy documents using an automated digitizing unit such as a scanner, (ii) recognizing specific information from the extracted data, and (iii) storing that information in memory. 776 F.3d at 1345. The Federal Circuit held that the patent was directed at an abstract idea, namely the "concept of data collection, recognition, and storage" which is "undisputedly well-known." *Id.* at 1347.

additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S.Ct. at 1297-98).

MicroStrategy contends that the server's ability to carry out automatic archiving based on classification information makes it an intelligence server instead of a generic computer. But the server appears to perform routine and conventional computer functions. *In Re TLI Communications*, 2015 WL 627858, at *12 ("Defendants are correct that each of these activities is a routine, conventional activity that a generic computer can perform . . . ."). MicroStrategy fails to offer insight into how these servers operate in a new manner.

MicroStrategy asserts that the patents-in-suit are directed at problems that now exist because electronic records are large and unwieldly. As discussed above, large amounts of data existed before the use of computers and the Internet. The patent describes how individuals can gather information and identify trends within that data, just as people have done for many years. Like the patent at issue in *Content Extraction*, this patent is directed at the well-known concept of data collection, recognition, and storage. *See Content Extraction*, 776 F.3d at 1347; *In re TLI Communications*, 2015 WL 627858, at *14.

**C. '303 Patent – "System and Method for Remote Manipulation of Analytic Reports"**

The patent claimed reads:

A system for interactive access to data, comprising:

- A network server performing:

  o Receiving user input to remotely manipulate or modify at least one report generated by at least one data source, wherein the report was previously served to a user system;

- o Presenting one or more markup language constructs associated with actions to manipulate or modify at least one report;

- o Enabling user input in the report, wherein the user input is initiated by activation of a markup language construct associated with the at least one report that was served to the user system and translating the user input received via first network enabled code to second network enabled code;

- A reporting server being configured to respond to the user input, performing:

  - o Communicating with user interface;

  - o Accessing an image of the at least one report;

  - o Manipulating the at least one report generated from the at least one data source; and

  - o Generating results to present via the user interface; and

- A user interface performing:

  - o remotely accessing and viewing at least one report generated from at least one remote data source; and

  - o providing user input to remotely manipulate or modify the at least one report, wherein the user input being provided by activating a markup language construct, and

- wherein the user input being translated from a first network enabled code to a second network enabled code.

(Dk. No. 1-3 at 12; '303 Patent col. 7-8.)

### 1. Step One

The '303 patent relates to the field of data processing and enables remote viewing and modification of analytic reports, via a network port such as a web browser. The background of the invention describes that running analytic reports against databases is a popular way to identify trends and other information from business data. (Dk. No. 1-3 at 9; Patent '303, col. 1:10-15.) The invention is directed at making systems easier to access and use. (Dk. No. 1-3 at 9; Patent col. 1:25-30.) This patent is also full of descriptions involving "report generation" and "creation of reports." The patent is, like the other two patents at issue, directed at the abstract idea of report generation and data storage.

### 2. Step Two

The Court finds that the '303 patent is an abstract idea and the Court now turns to the second step under the § 101 analysis. This step requires the abstract idea to contain an inventive concept such that it is eligible for patent protection under § 101. The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S.Ct. at 2358. The use of a "computer does not render an invention patentable if, absent the use of a computer, it would not have been." *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-CV-800-WCB, 2015 WL 3452469, at *12 (E.D. Tex. May 29, 2015); *see Alice*, 134 S.Ct. at 2357–59. This patent does no more than this.

As the California court noted in *Enfish*, patentees relied on a low bar when writing applications to the Patent and Trademark Office, but since *Bilski*, *Mayo*, and *Alice*, the rules have changed. 56 F. Supp. 3d at 1182 (noting "many inventors drafted their patents for an age of patent law that no longer exists"). Unfortunately for the patentees, this results in ineligible patents.

## III. CONCLUSION

For the reasons discussed above, the Court GRANTS the defendant's motion and this case is hereby DISMISSED.

The Court will enter the appropriate order.

The Clerk is directed to send a copy of this Opinion to all counsel of record.


Date: July 17, 2015
      Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge